UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA CHARLES ACOSTA, CDCR #BI-1477,<br><br>                          Plaintiff,<br><br>vs.<br><br>Y. SERVIN, Psychologist, Calipatria State Prison; DOE 1, Psychologist, Wasco State Prison; DOE 2, Chief Medical Officer, Wasco State Prison; DOE 3, Chief Health Officer, Calipatria State Prison,<br><br>                         Defendants. | Case No. 20cv2225-MMA-MSB<br><br>**ORDER GRANTING MOTION TO PROCEED IN FORMA PAUPERIS;**<br><br>[Doc. No. 2]<br><br>**DENYING MOTION FOR ASSIGNMENT OF COUNSEL;**<br><br>[Doc. No. 3]<br><br>**DISMISSING COMPLAINT FOR FAILING TO STATE A CLAIM PURSUANT TO**<br>**28 U.S.C. § 1915(e)(2)(B)(ii)**<br>**AND § 1915A(b)(1)** |

      Plaintiff Joshua Charles Acosta, proceeding pro se and currently incarcerated at Calipatria State Prison ("CAL") in Imperial, California, filed this civil rights action pursuant 42 U.S.C. § 1983 in the Central District of California on October 28, 2020. *See* "Compl.," Doc. No. 1 at 1. Plaintiff claims CAL Psychologist Y. Servin, CAL's Chief Mental Health Officer ("Doe 3"), and an unidentified psychologist and Chief Medical

Officer at Wasco State Prison ("Does 1 & 2"), violated his rights under the Americans with Disabilities Act ("ADA"), his "protections under the *Armstrong*, *Coleman*, and *Clark* remedial plans," and the Eighth Amendment by "hous[ing] [him] within the mainline population" at both CAL and Wasco despite his autism. *Id.* at 3–6. Plaintiff seeks $250,000 in compensatory damages, an injunction requiring Defendants "to identify, assess, and treat people with autism spectrum disorder," and Defendants' "termination of employment." *Id.* at 7.

Plaintiff did not prepay the civil filing fee required by 28 U.S.C. § 1914(a) at the time of filing, but instead submitted an Application to Proceed In Forma Pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a) (Doc. No. 2), as well as an *ex parte* Motion for Assignment of Counsel. *See* Doc. No. 3. On November 13, 2020, however, the Honorable Cormac J. Carney determined venue did not lie in the Central District of California, and transferred the action here in the interest of justice pursuant to 28 U.S.C. § 1406(a).[1] *See* Doc. No. 5.

**I.     Motion to Proceed In Forma Pauperis**

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee.[2] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d

---

[1] Judge Carney did not rule on Plaintiff's requests to proceed IFP or to appoint counsel; nor did he conduct an initial screening of his Complaint as required by 28 U.S.C. § 1915(e)(2) or § 1915A before transferring the case here. *See* Doc. No. 5 at 1–2 & n. 2.

[2] For civil cases like this one, filed before December 1, 2020, the civil litigant bringing suit must pay the $350 statutory fee in addition to a $50 administrative fee. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. June. 1, 2016). The $50 administrative fee does not apply to persons granted leave to proceed IFP, however. *Id.* This administrative fee increased to $52 for civil cases filed on or after December 1, 2020, but that portion still does not apply to persons granted leave to proceed IFP. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2020).

1176, 1177 (9th Cir. 1999). However, a prisoner who is granted leave to proceed IFP remains obligated to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, 577 U.S. 82, 84 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), and regardless of whether his action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1), (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 577 U.S. at 85–86.

In support of his IFP Motion, Plaintiff has submitted a certificate of funds and a certified copy of his CDCR trust account statement pursuant to 28 U.S.C. § 1915(a)(2) and S.D. Cal. Civ. L.R. 3.2. *Andrews*, 398 F.3d at 1119. The Court has reviewed Plaintiff's trust account activity, which shows that he carried an average monthly balance of $86.42, had $84.42 in average monthly deposits to his trust account for the six months preceding the filing of this action, and an available balance of $31.92 at the time of filing. *See* Doc. No. 2 at 3–6.

Based on this accounting, the Court GRANTS Plaintiff's Application to Proceed IFP and assesses a partial filing fee of $17.28 pursuant to 28 U.S.C. § 1915(b)(1). However, the Court directs the Secretary of the CDCR, or her designee, to collect this initial filing fee only if sufficient funds are available in Plaintiff's account at the time this

Order is executed. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Bruce*, 577 U.S. at 84; *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay ... due to the lack of funds available to him when payment is ordered."). The remaining balance of the $350 total fee owed in this case must be collected by the agency having custody of the prisoner and forwarded to the Clerk of the Court pursuant to 28 U.S.C. § 1915(b)(2).

## II. Motion for Assignment of Counsel

Plaintiff also seeks the appointment of counsel to assist him because he is indigent, autistic, lacks legal experience, has limited access to legal materials, and claims his case is complex and will "necessitate serious discovery proceedings" to prepare for summary judgment and trial. *See* Doc. No. 3 at 3.

However, there is no constitutional right to counsel in a civil case. *Lassiter v. Dept. of Social Servs.*, 452 U.S. 18, 25 (1981); *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009). And while 28 U.S.C. § 1915(e)(1) grants the district court limited discretion to "request" that an attorney represent an indigent civil litigant, *Agyeman v. Corr. Corp. of America*, 390 F.3d 1101, 1103 (9th Cir. 2004), this discretion may be exercised only under "exceptional circumstances." *Id.*; *see also Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991). A finding of exceptional circumstances requires the Court "to consider whether there is a 'likelihood of success on the merits' and whether 'the prisoner is unable to articulate his claims in light of the complexity of the legal issues involved.'" *Harrington v. Scribner*, 785 F.3d 1299, 1309 (9th Cir. 2015) (quoting *Palmer*, 560 F.3d at 970).

As currently pleaded, Plaintiff's Complaint demonstrates neither the likelihood of success nor the legal complexity required to support the appointment of pro bono counsel pursuant to 28 U.S.C. § 1915(e)(1). *See Terrell*, 935 F.3d at 1017; *Palmer*, 560 F.3d at

970.  First, while Plaintiff may not be formally trained in law, his allegations, as liberally construed, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), show he nevertheless is fully capable of articulating the facts and circumstances relevant to his purported claim, which does not appear to be legally complex. *Agyeman*, 390 F.3d at 1103.  Second, for the reasons discussed more fully below, Plaintiff's Complaint requires sua sponte dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1), and it is simply too soon to tell whether he will be likely to succeed on the merits of either an ADA or Eighth Amendment claim for relief. *Id.*; *cf. Garcia v. Smith,* 2012 WL 2499003, at *3 (S.D. Cal. June 27, 2012) (noting that even if a prisoner's claims survive Defendants' Motion to Dismiss, it may be "too early to determine the likelihood of success on the merits.").

Therefore, the Court finds no "exceptional circumstances" currently exist and DENIES Plaintiff's Motion for Assignment of Counsel (Doc. No. 3) without prejudice on that basis. *See, e.g., Cano v. Taylor*, 739 F.3d 1214, 1218 (9th Cir. 2014) (affirming denial of counsel where prisoner could articulate his claims in light of the complexity of the issues involved, and did not show likelihood of succeed on the merits).

**III.    Sua Sponte Screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b)**

A.    <u>Standard of Review</u>

Because Plaintiff is a prisoner and is proceeding IFP, his Complaint requires a preliminary review pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these statutes, the Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion thereof, if it is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)).  "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (citation omitted).

//

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)").

Federal Rules of Civil Procedure 8(a) and 12(b)(6) require a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121. Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. And while the court "ha[s] an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt," *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)), it may not "supply essential elements of claims that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

"Courts must consider the complaint in its entirety," including "documents incorporated into the complaint by reference" to be part of the pleading when determining whether the plaintiff has stated a claim upon which relief may be granted. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Schneider v. Cal. Dep't of Corrs.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

B.  Factual Allegations & Exhibits

Plaintiff claims that soon after he first entered into CDCR custody at Wasco State Prison in December 2018 and was "housed within the mainline population," he was interviewed by a psychologist, Defendant Doe #1. *See* Compl. at 5. Plaintiff claims he

informed Doe #1 that he had autism, but "nothing was done." *Id.* On January 16, 2019, Plaintiff was assaulted by two inmates, but Doe #2, a licensed psychologist and Wasco's Chief Mental Health Officer "placed [him] back into the population." *Id.* Plaintiff was then transferred to CAL on May 14, 2019. *Id.*

Once at CAL, on several unspecified occasions, Plaintiff claims to have "sought out" unspecified assistance from Defendant Y. Servin, another psychologist, who has a "duty to access, treat" and "protect people with autism," but Servin "made the choice to ignore [his] condition." *Id.* at 5–6. Plaintiff also claims to have "entered a grievance" regarding his mental health treatment, but CAL's Chief Mental Health Officer (Defendant Doe #3) "made no effort to confirm" a previous autism spectrum disorder diagnosis Plaintiff contends was "assessible within [his] file" and he was "left without the protections that are guaranteed under the ADA." *Id.* at 6.

These broad assertions are the only allegations included in Plaintiff's Complaint. However, he attaches a CDCR 1824 Reasonable Accommodation Request Form[3] as an Exhibit, and it provides some further details.[4] On this CDCR 1824 Form, dated August 23, 2020, Plaintiff requested "single-cell status and/or to have the option to select a cellmate" who is "understanding" of his autism and "willing to cooperate with [him] despite [his] limited social skills." *Id.* at 8. Plaintiff also attaches a Reasonable

---

[3] "If an inmate is disabled and seeks accommodations under the ADA, he may submit a Reasonable Accommodation Request Form 1824 which is an informal request prior to pursuing formal grievance proceedings using Form 602." *Vasquez v. Paramo*, No. 3:18-CV-2097-GPC (MDD), 2019 WL 2436737, at *3 (S.D. Cal. June 11, 2019) (citing *Warzek v. Onyeje*, Case No. 17cv1452-AWI-SAB (PC), 2019 WL 1130471, at *7 (E.D. Cal. Mar. 12, 2019); *Gatlin v. Nichols*, No. CIV S-06-2465 WBS GGH P, 2007 WL 4219170, at *1 (E.D. Cal. Nov. 29, 2007)); *Applegate v. Kokor*, Case No. 15cv1054-AWI-MJS(PC), 2016 WL 6494711, at *4 (E.D. Cal. Nov. 2, 2016)).

[4] While "it is not the Court's duty," when screening a complaint pursuant to 28 U.S.C. § 1915(e) and § 1915A "to wade through exhibits to determine whether cognizable claims have been stated," *Woodrow v. Cty. of Merced*, No. 1:13-cv-01505-AWI, 2015 WL 164427, at *4 (E.D. Cal. Jan 13, 2015), the Court will consider Plaintiff's exhibits to the extent they flesh out some further detail as to the bases for his claims. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (reaffirming liberal construction of pro se pleadings after *Iqbal*).

Accommodation Panel ("RAP") Response dated September 17, 2020, which is designated as "1824 Log No. CAL-D-20-00863." *Id.* at 9.

No Defendant named in Plaintiff Complaint appears to have considered this CDCR Form 1824 request, but the RAP notes Defendant Y. Servin, CAL's Chief Psychologist, "conducted a Mental Health evaluation on July 16, 2020," and that a second evaluation to determine whether Plaintiff "met the criteria for inclusion into the Developmental Disability Program (DPP) as described in the *Clark* Remedial Plan," had also been conducted on September 2, 2020.[5] *Id.* However, as of September 30, 2020, the date the RAP was signed by an ADA Coordinator, a final decision regarding Plaintiff's eligibility yet to been reached. *Id.* at 9–10. Plaintiff was advised that should his status in the general population be "affected at the conclusion of that evaluation, arrangements w[ould] be made to make sure [he was] housed appropriately," and that if he disagreed with the RAP Response and wished to file an "appeal/grievance," he must attach a copy of the RAP Response and his CDCR 1824 in support. *Id.* at 10.

Plaintiff's RAP Response also notes he had previously filed a CDCR 602 HC Medical Grievance in November 2019 (Log No. CAL-HC-190000162) requesting treatment for Post-Traumatic Stress Disorder, *id.*, but it is unclear whether 1824 Log No. CAL-D-20-00863, CDCR 602 HC Log No. CAL-HC-190000162, or some other administrative appeal or grievance is the one he claims to have filed in the body of his Complaint. *See id.* at 6.

//

---

[5] The *Clark* Remedial Plan is part of a class-action settlement agreement establishing a set of policies and procedures to ensure "California prisoners with developmental disabilities [are] protected from serious injury and discrimination on account of their disability." *Clark v. California*, 739 F. Supp. 2d 1168, 1172 (N.D. Cal. 2010). As an initial step and continuously throughout their confinement, CDCR personnel must properly identify developmentally disabled prisoners to ensure that they receive appropriate accommodation under the Americans with Disabilities Act and the Rehabilitation Act of 1973. *Id.* at 1178; *see also McNeil v. Berryhill*, No. 1:15-CV-01442-AWI-GSA, 2018 WL 5603599, at *5 (E.D. Cal. Oct. 29, 2018), *report and recommendation adopted*, No. 1:15-CV-01442-AWI-GSA, 2018 WL 6615106 (E.D. Cal. Nov. 16, 2018).

C. Discussion

Plaintiff includes two seemingly overlapping, but potentially separate causes of action under the "Claim I" heading of his Complaint. First, he contends Defendants as a group violated his "[p]rotections under the … ADA" and "under the *Armstrong*, *Coleman*, and *Clark* remedial plans." *Id.* at 5. Second, he claims Defendants violated the Eighth Amendment by acting with "deliberate indifference" to the "needs of a disabled person with [a]utism." *Id.* He sues each Defendant in both his or her official and individual capacity, and he seeks both injunctive relief and damages against them all.[6] *Id.* at 3–4, 7.

1. *Americans with Disabilities Act*

Title II of the ADA bars a public entity from excluding an eligible disabled individual from "participation in a public entity's services, programs, or activities." *Sheehan v. City & Cty. of S.F.*, 743 F.3d 1211, 1232 (9th Cir. 2014), *rev'd in part on other grounds, cert. dismissed in part sub nom. City & Cty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600 (2015). To state a claim under Title II of the ADA, Plaintiff must allege: (1) he is an individual with a disability, (2) he is otherwise qualified to participate in or receive the benefit of a public entity's services, programs, or activities, (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity, and (4) such exclusion, denial of benefits, or discrimination was by reason of his disability. *Vos v. City of Newport Beach*, 892 F.3d 1024, 1036 (9th Cir. 2018) (quoting *Sheehan*, 743 F.3d at 1232).

"A plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in [his or] her individual capacity to vindicate rights created by Title II of the ADA...."

---

[6] Plaintiff's transfer from Wasco to CAL moots his claims for injunctive relief with respect to Defendant Does #1 & 2. *See Dilley v. Gunn*, 64 F.3d 1365, 1368 (9th Cir. 1995); *Alvarez v. Hill*, 667 F.3d 1061, 1064 (9th Cir. 2012).

*Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002).  Instead, the proper defendant in an ADA action is the public entity responsible for the alleged discrimination.  *United States v. Georgia*, 546 U.S. 151, 153 (2006).  The term "public entity" includes state prisons.  *See Pennsylvania Dept. of Corrs. v. Yeskey*, 524 U.S. at 210 (holding state prisons are public entities under Title II).  Thus, to the extent Plaintiff seeks to sue Defendants in their individual capacities under the ADA, but does not name any public entity as a party, he fails to state a claim upon which relief can be granted.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii); § 1915A(b)(1); *Watison,* 668 F.3d at 1112; *Wilhelm,* 680 F.3d at 1121.

And while state prison officials alleged to have acted in their official capacity on behalf of the public entity may be named as parties in an ADA Title II claim seeking injunctive relief, *see Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1187-88 (9th Cir. 2003); *Perry v. Brevick*, No. 2:21-CV-0065 KJN P, 2021 WL 352374, at *3 (E.D. Cal. Feb. 2, 2021), in order to seek monetary damages, Plaintiff must allege intentional discrimination by the entity under the "deliberate indifference" standard.  *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001).  "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon ... the likelihood."  *Id.* at 1139.  This standard is not met "where a duty to act may simply have been overlooked," but rather "a failure to act must be a result of conduct that is more than negligent."  *Id.; see also Germaine-McIver v. Cty. of Orange*, No. SACV 16-01201-CJC (GJSx), 2018 WL 6258896, at *13 (C.D. Cal. Oct. 31, 2018).

As alleged, Plaintiff's Complaint plainly fails to state a plausible claim for relief under the ADA.  First, while he claims to be autistic, *see* Compl. at 5-6, and he cited his "limited social skills & understanding" as a basis for his CDCR 1824 Reasonable Accommodation Request, *id.* at 8, he includes no further factual allegations in his Complaint to plausibly show he suffers from mental impairment sufficient to qualify as a disability under the ADA.  *See* 42 U.S.C. § 12102; *Iqbal*, 556 U.S. at 678.  In fact, the RAP Response attached to Plaintiff's Complaint indicates that while his claims of autism

were twice evaluated by the Mental Health Department at CAL, "it was determined that [he] [was] able to advocate for [him]self, … communicate effectively, … attend to [his] self-care," and was "able to follow rules and access resources appropriately," and that a "final decision" as to whether or not he "meet[s] [the] criteria for inclusion into the DPP as described by the *Clark* Remedial Plan (CRP) … ha[d] not been reached." *See* Compl. at 9.

The ADA defines "disability" as (1) a physical or mental impairment that substantially limits one or more major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 12102(1). Major life events include, but are not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A); 29 C.F.R. § 1630.2(j)(1)(ii) ("An impairment is a disability if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population."); *see also Coons v. Sec'y of U.S. Dep't. of Treasury*, 383 F.3d 879, 885 (9th Cir. 2004); *Wilkey v. Cty. of Orange*, 295 F. Supp. 3d 1086, 1091 (C.D. Cal. 2017).

Courts consider three factors to determine whether a disability is substantially limiting: (1) the nature and severity of the physical impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long-term impact of the impairment. *See Fraser v. Goodale*, 342 F.3d 1032, 1038 (9th Cir. 2003) (citing 29 C.F.R. § 1630.2(j)(2)). Plaintiff has the burden to plead he is disabled. *See Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 988 (9th Cir. 2007). However, his Complaint states only that he "has autism," *see* Compl. at 5, and he must make offer more than "bald assertions" in order to demonstrate his impairment substantially limits one or more major life activity. *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009).

Second, Plaintiff has alleged no facts whatsoever to show he was excluded from participating in any service, program, or activity based upon his disability, nor has he

alleged facts showing any discriminatory intent due to or "by reason of" his autism. *See Vos*, 892 F.3d at 1036; *Gleason v. Lynch*, No. 2:20-CV-1971-EFB P, 2021 WL 634738, at *2 (E.D. Cal. Feb. 18, 2021) (denying reconsideration of 28 U.S.C. § 1915A dismissal of ADA claims by prisoner who alleged to be disabled, but included "no allegations that he was excluded from participating in any program or discriminated against because of his disabilities"); *Hawkins, et al., v. San Diego Cnty., et al.*, No. 3:20-CV-2200-WQH-KSC, 2021 WL 615052, at *7 (S.D. Cal. Feb. 16, 2021) (finding pretrial detainees' "vague and conclusory allegations" that Defendants "failed and refused to establish and maintain [disabled inmates] access" to various services insufficient to state a plausible claim for relief under the ADA).

        2.       *Armstrong*, *Coleman*, and *Clark* Remedial Plans

Plaintiff also seeks "[p]rotections under the *Armstrong*, *Coleman*, and *Clark* remedial plans." *See* Compl. at 5.[7]

To the extent Plaintiff is attempting to base a claim on the violation of an order in any of the above-mentioned cases, court orders in those class actions do not provide him

---

[7] *Armstrong* is a class action pending in the United States District Court for the Northern District of California which involves a "certified class of all present and future California state prison inmates and parolees with disabilities [who] sued California state officials in their official capacities, seeking injunctive relief for violations of the R[ehabilitation] A[ct] and the ADA in state prisons." *Armstrong v. Wilson*, 124 F.3d 1019, 1021 (9th Cir. 1997). "The *Coleman/Plata* actions are consolidated civil rights class actions pending in the United States District Court for the Eastern and Northern Districts of California." *Edelbacher v. California Bd. of Parole Hearings*, No. 17-CV-04783-HSG (PR), 2017 WL 4340348, at *1 (N.D. Cal. Sept. 29, 2017). "The *Coleman* class action concerns the constitutional adequacy of the mental health care provided to CDCR inmates and involves the class of seriously mentally ill persons in California prisons. The *Plata* class action concerns the constitutional adequacy of CDCR's inmate medical health care and involves the class of state prisoners with serious medical conditions. The Three-Judge Court presiding over these class actions has issued various orders related to prison overcrowding and has required the State of California to undertake prison population reduction measures." *Id.* The *Clark* Remedial Plan is part of a class-action settlement agreement establishing a set of policies and procedures to ensure "California prisoners with developmental disabilities [are] protected from serious injury and discrimination on account of their disability." *Clark v. California*, 739 F. Supp. 2d 1168, 1172 (N.D. Cal. 2010). As an initial step and continuously throughout their confinement, CDCR personnel must properly identify developmentally disabled prisoners to ensure that they receive appropriate accommodation under the Americans with Disabilities Act and the Rehabilitation Act of 1973. *Id.* at 1178; *see also McNeil*, 2018 WL 5603599, at *5.

with an independent claim for relief in this action. *See Cagle v. Sutherland*, 334 F.3d 980, 986–87 (9th Cir. 2003) (consent decrees often go beyond constitutional minimum requirements, and do not create or expand rights); *Green v. McKaskle*, 788 F.2d 1116, 1123 (5th Cir. 1986) (remedial decrees remedy constitutional violations but do not create or enlarge constitutional rights). While Plaintiff may allege independent claims for relief based for violation of his rights under federal law, *Hiser v. Franklin*, 94 F.3d 1287, 1291 (9th Cir. 1996), he may not rely on the violation of consent decrees or remedial plans in other cases to state a claim. *See Frost v. Symington*, 197 F.3d 348, 358–59 (9th Cir. 1999). Relief for violation of consent decrees or remedial plans must be pursued in the case in which the decree or plan was issued. *Id.*; *see also Crayton v. Terhune*, No. C 98–4386 CRB (PR), 2002 WL 31093590, *4 (N.D. Cal. Sept.17, 2002). "[A] civil rights action is not the proper means by which to enforce a remedial decree." *Rogers v. Schriro*, No. CV 07–0142–PHX–MHM (JRI), 2007 WL 2808226, *2 (D. Ariz. Sept. 25, 2007) (citations omitted). "Jurisdiction to enforce the judgment is retained by the court that entered it," and "individual prisoners are not allowed to seek relief through a § 1983 action for violations of the decree." *Id.* (citations omitted).

### D. Eighth Amendment

Finally, Plaintiff claims all Defendants have violated his Eighth Amendment rights by acting with "deliberate indifference" to his needs as an autistic person. *See* Compl. at 5. He does not specify whether this allegation relates to the January 16, 2019 assault he claims occurred at WSP, or to the conditions of his confinement after he was transferred to CAL on May 14, 2019. But to the extent he seeks to hold any Defendant liable under the Eighth Amendment, his Complaint fails to allege a plausible claim upon which § 1983 relief can be granted. *See Iqbal*, 556 U.S. at 678; *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121.

The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on prison officials to "provide humane conditions of confinement." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). These include "food, clothing, shelter,

sanitation, medical care, and personal safety." *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986), *abrogated in part on other grounds by Sandin v. Conner*, 515 U.S. 472 (1994); *see also Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). "The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones." *Farmer*, 511 U.S. at 832.

Prisoners do not have an Eighth Amendment right to be housed in a single cell. *See Rhodes v. Chapman*, 452 U.S. 337, 347-48 (1981) (double-celling does not violate Eighth Amendment unless it amounts to unnecessary and wanton pain). Nor is there a Fourteenth Amendment right to claim a particular security classification or housing classification. *See Meachum v. Fano*, 427 U.S. 215, 224–25 (1976) (no liberty interest protected by the Due Process Clause is implicated in a prison's reclassification and transfer decisions); *see also Myron v. Terhune*, 476 F.3d 716, 718 (9th Cir. 2007). Neither the Eighth nor the Fourteenth Amendment endows prisoners with a right to be housed in a particular part of the prison or with a particular inmate. *See Meachum*, 427 U.S. at 224–25 (no liberty interest in placement in particular facility); *Allen v. Purkett*, 5 F.3d 1151, 1153 (8th Cir. 1993) (no Due Process right to be housed in a certain barrack or housing unit or with certain inmates); *Bjorlin v. Hubbard*, No. CIV S-09-1793, 2010 WL 457685, *1 (E.D. Cal. Feb. 4, 2010) (same).

Instead, to properly plead "cruel and unusual" punishment, Plaintiff must allege facts which demonstrate that he was confined under conditions posing a risk of "objectively, sufficiently serious" harm and that prison officials had a "sufficiently culpable state of mind." *Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir. 1995). There is both an objective and subjective component to the inquiry. *Hallett v. Morgan*, 296, F.3d 732, 744 (9th Cir. 2002). First, the Eighth Amendment requires Plaintiff to plead facts sufficient to show he was subjected to an objectively serious deprivation of "the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 832. The "routine discomfort inherent in the prison setting" is inadequate to satisfy the objective prong of the inquiry. *Johnson*, 217 F.3d at 731.

Second, Plaintiff must allege facts sufficient to plausibly show each official acted with "deliberate indifference" to his health or safety. *Farmer*, 511 U.S. at 834. This requires him to allege facts demonstrating that the official displayed a subjective indifference "to a substantial risk of serious harm." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). "Deliberate indifference" is evidenced only when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. If an official "should have been aware of the risk, but was not, then the [official] has not [violated a party's Constitutional rights], no matter how severe the risk." *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002); *Farmer*, 511 U.S. at 838 ("[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under [the Eighth Amendment] be condemned as the infliction of punishment.").

With respect to either his placement "within the mainline population" at WSP, or any alleged failure to "protect people with Autism" occurring after his transfer to CAL, *see* Compl. at 5, Plaintiff fails to state a plausible claim for relief under the Eighth Amendment. Even if the Court assumes his autism is an objectively serious medical condition that could potential qualify Plaintiff for single-cell housing eligibility at either WSP or CAL, *see e.g., Coleman v. Virga,* No. 2:17-CV-0851-KJM-KJN P, 2021 WL 84356, at *22 (E.D. Cal. Jan. 11, 2021) (noting that CAL. DEPT. OF CORR. & OP. MAN. § 54046.10 "specifically provides that the ICC shall consider recommendations by clinical staff for single-cell status due to mental health concerns"), he fails to allege any facts whatsover to show that Does #1 or #2 acted with "deliberate indifference" to either a serious risk to his health or his safety when he was "housed within the mainline population," at WSP in December 2018, or when Defendants Servin or Doe #3 allegedly failed to "protect" him by refusing to ensure single-cell placement after he was transferred to CAL. *See* Compl. at 5–6, 8–10.

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "[T]he prison official must not only [be alleged to] 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also [be alleged to have] draw[n] the inference.'" *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837). And while Plaintiff invokes the legally significant term of art "deliberate indifference" with respect to his "needs [as] a disabled person with [a]utism," *see* Compl. at 5, pleadings like his which offer only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (citation omitted). I nstead, Plaintiff must include "factual content that allows the court to draw the reasonable inference" that each individual Defendant he seeks to sue knew he faced a substantial risk of danger, and yet chose to ignore it. *Id.*; *Farmer*, 511 U.S. at 847; *see also Figueroa v. Clark*, No. 1:19-CV-00968-BAM PC, 2020 WL 4700806, at *7 (E.D. Cal. Aug. 13, 2020) (in the absence of physical injury, a prisoner's generalized fear of attack, violence, or intimidation at the hands of fellow prisoners is insufficient to sustain a plausible Eighth Amendment claim). He has not.

### E. Leave to Amend

Based on the foregoing, the Court finds Plaintiff's Complaint fails to state any § 1983 claim upon which relief can be granted, and DISMISSES it *sua sponte* and in its entirety pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1). *See Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121. In light of Plaintiff's pro se status, the Court also GRANTS Plaintiff leave to amend with respect to Defendant Servin and *any of the Doe Defendants he is able to identify by name*.[8] *See Rosati v. Igbinoso*, 791 F.3d 1037,

---

[8] As noted, Plaintiff's original Complaint identifies only Defendant Y. Servin by name, but he seeks to sue three other parties identified only by their titles and included as Does. *See* Compl. at 1, 3-4. The use of John Does in pleading practice is generally disfavored. *See Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980); *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999); *Lopes v. Viera*, 543 F. Supp.2d 1149, 1152 (E.D. Cal. 2008). Therefore, Plaintiff is hereby advised that to the extent he continues to include these defendants and successfully amends to state a viable claim for relief against any of them, he must also identify those parties by name before the United States Marshal will be ordered and/or able to

1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend [pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)] unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'") (quoting *Akhtar v. Mesa,* 698 F.3d 1202, 1212 (9th Cir. 2012)).

## IV.    Conclusion and Orders

For the reasons discussed, the Court:

1. **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (Doc. No. 2).

2. **DIRECTS** the Secretary of the CDCR, or her designee, to collect from Plaintiff's trust account the $17.28 initial filing fee assessed, *if those funds are available at the time this Order is executed*, and forward whatever balance remains of the full $350 owed in monthly payments in an amount equal to twenty percent (20%) of the preceding month's income to the Clerk of the Court each time the amount in Plaintiff's account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2).  ALL PAYMENTS MUST BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order by U.S. Mail on Kathleen Allison, Secretary, California Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, California, 94283-0001, or in the alternative by forwarding an electronic copy to trusthelpdesk@cdcr.ca.gov.

4. **DENIES** Plaintiff's Motion for Assignment of Counsel (Doc. No. 3).

---

execute service upon any of them. *See Walker v. Sumner*, 14 F.3d 1415, 1422 (9th Cir. 1994) (in order to properly effect service under Fed. R. Civ. P. 4(c)(3) in an IFP case, the plaintiff is required to "furnish [to the Marshal] the information necessary to identify the defendant."); *Finefeuiaki v. Maui Cmty. Corr. Ctr. Staff & Affiliates*, 2018 WL 3580764, at *6 (D. Haw. July 25, 2018) (noting that "[a]s a practical matter, the United States Marshal cannot serve a summons and complaint on an anonymous defendant."); *see also Ramsey v. Dickerson*, No. 1:19-CV-00666-DAD-GSA (PC), 2021 WL 463630, at *6 (E.D. Cal. Feb. 9, 2021) (advising pro se prisoner that "unidentified, or 'John Doe' defendants must be named or otherwise identified before service can go forward.").

1      5.    **DISMISSES** Plaintiff's Complaint sua sponte and in its entirely based on his for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

    6.    **GRANTS** Plaintiff sixty (60) days leave from the date of this Order in which to file an Amended Complaint which cures the deficiencies of pleading noted. Plaintiff's Amended Complaint must be complete by itself without reference to his original pleading. Defendants not named and any claim not re-alleged in his Amended Complaint will be considered waived. See CIVLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

    If Plaintiff fails to file an Amended Complaint within sixty (60) days, the Court will enter a final Order dismissing this civil action based both on his failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2) and § 1915A(b) and his failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

    **IT IS SO ORDERED**.

DATE: February 24, 2021

_____
HON. MICHAEL M. ANELLO
United States District Judge